UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23807

TAYLOR ANNE MOORE,

     Plaintiff,

v.

MSC CRUISES, S.A.,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

     Plaintiff, TAYLOR ANNE MOORE (hereinafter "MOORE"), through undersigned counsel, sues Defendant, MSC CRUISES, S.A., (hereinafter "MSC"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

     1.    MOORE seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

     4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by MSC.

     5.    MOORE is *sui juris* and is a resident and citizen of the state of Florida.

     6.    MSC is a citizen of the state of Florida and the nations of Italy and Switzerland.

7.      MSC is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.      MSC, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.      Operated, conducted, engaged in, or carried on a business venture; and/or

      b.      Had an office or agency; and/or

      c.      Engaged in substantial activity; and/or

      d.      Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the subject stairs, and the surrounding area involved in MOORE's incident, and all material and effects pertaining thereto, including any material that was applied or that should have been applied, and/or other parts thereof, the area and stairs' design and/or visual condition, railings, nosings, and/or any other applied, adhesive, and/or other material.

11.     MOORE'S incident occurred on or about October 14, 2022, while she was a fare paying passenger on MSC'S vessel, the *Meraviglia*.

12.     At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in MOORE'S incident.

13.   At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Meraviglia*.

14.   On or about October 14, 2022, between approximately 12:00 a.m. and 1:00 a.m., MOORE (an honorably discharged disabled army veteran) was stepping down the outdoor stairs between deck 18 and deck 16. However, unbeknownst to MOORE, one of the steps near the middle of the stairs was wet with a foreign transitory liquid substance, and there was no slip resistant strip on the step. When MOORE stepped on this step, she slipped, fell backwards, and hit her elbow, body, and the back of her head on the steps behind her.

15.   As a result, MOORE sustained severe injuries that include, but are not limited to, a severely injured head that required stitches, severe bleeding, a concussion, possible traumatic brain injuries, and other serious bodily injuries.

16.   MOORE was taken to the ship's medical center at approximately between 1:00 a.m. 2:00 a.m. by wheelchair. Moreover, the staff that arrived did not have a first aid kit with them. The ship's medical staff unreasonably delayed in taking her to the medical center. When she arrived at the medical center, she was not treated until approximately fifteen to twenty minutes later, and the ship's doctor applied stiches to her head. However, the ship's doctor did not give MOORE a large enough quantity nor a strong enough medicine or anesthesia or similar medicine prior to applying the stitches to her, such that she was in great pain during the entire procedure. Furthermore, the ship's nurse/other staff member did not prescriber her the pain medicine she needed for her trip home, even though she complained of being in great pain, and only gave her approximately two small packets of an aspirin like medicine that was not strong enough for her pain. Moreover, the ship's doctor failed to diagnose MOORE's concussion, traumatic brain injuries, or make an appropriate referral for her treatment.

17.   At all relevant times, the dangerous and/or risk creating conditions include, but are

not limited to the following:

   a. The stairsteps MOORE slipped on were contaminated with a foreign liquid substance; and

   b. The stairsteps MOORE slipped on were unreasonably slippery; and

   c. The stairsteps MOORE slipped on lacked slip resistant strips, or in the alternative, lacked adequate slip resistant strips; and

   d. The shiny and otherwise obscuring visual condition of the stairs was such that it was difficult for MOORE to decern that they were slippery prior to MOORE's fall; and

   e. There was either non-existent drainage for the subject stairsteps or any such drainage was not reasonably draining liquid from the subject area at the time of MOORE's incident; and

   f. The stairsteps and railings involved in MOORE'S incident were uneven and not uniform or otherwise proper in dimensions (including proper width, height, depth, angles, and otherwise), which unreasonably hindered MOORE's body's ability to step safely down the subject stairsteps; and

   g. The area was not adequately lit, and the stairsteps MOORE fell on lacked adequate visual cues to help passengers see each step (such as yellow or other conspicuous tape/signs/stickers/bright noticeable coloring/other cues); and

   h. MSC did not have crewmembers adequately supervising the subject area at the time; and

   i. The unreasonable overcrowding on the subject stairs, as there were approximately 5 or more persons trying to use the subject stairs at the same time, far too many passengers for stairs of this size. The crewmembers MSC had in the subject area failed

to adequately control this crowd and failed to allow for a safe number of passengers to descend the stairs during appropriate intervals of time; and

j.   Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to and did cause MOORE'S incident and injuries, and MOORE is alleging that MSC was negligent as to each of these conditions alternatively.

19.   MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   MOORE was in the subject area for approximately at least twenty minutes before her incident, and was able to see the stairs during this whole time, but did not see anyone spill any liquid during this approximately at least twenty minutes. Therefore, MOORE infers that the step she slipped on was wet for at least approximately twenty minutes prior to her incident, such that MSC had sufficient time to become aware of the liquid and to take appropriate remedial measures, but failed to do so. Moreover, a travel companion of MOORE saw that the stairs were wet at least twenty minutes prior to the incident.

b.   MOORE observed a crew member in the immediate vicinity at the time of her incident, such that MOORE reasonably infers that this crew member was or should have been familiar with the dangerous and/or risk-creating conditions of the subject stairs, including the liquid thereon.

c.   There were small signs on the subject stairs that said "**watch your step**, but a reasonable person would not reasonably have been able to see these signs while stepping down the steps.

d.  MSC participated in the installation and/or design of the subject area, or alternatively, MSC approved of the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject stairs, such that MSC should have known of the design defects of the subject stairs and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in **paragraph 17(a-g, j)** of this complaint.

e.  Both prior to and after the subject incident, MSC installed and/or refitted similar stairs on other ships in MSC'S fleet to make them less dangerous.

f.  There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in **paragraph 17(a-g, j)** of this Complaint, and MSC should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for MSC to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

g.  MSC also knew or should have known of these dangerous conditions through inspecting the subject area involved in MOORE'S incident, and if it did not know of these dangerous conditions, this was because MSC failed to adequately inspect the subject area prior to MOORE's incident.

h.  Previous passengers suffered prior incidents involving slips and falls on stairs on the subject ship or on similar surfaces on other ships in its fleet, including, but not limited to, the Plaintiff in *Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964-RS, 2019 WL

4693200, at *1 (S.D. Fla. Aug. 9, 2019), and *Taiariol v. MSC Crociere, S.A.*, No. 0:15-CV-61131-KMM, 2016 WL 1428942, at *1 (S.D. Fla. Apr. 12, 2016), aff'd, 677 F. App'x 599 (11th Cir. 2017).

   i.   Moreover, MSC knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.   The subject area and the vicinity lacked adequate safety features to prevent or minimize MOORE'S incident and/or injuries.

22.   These hazardous conditions were known, or should have been known, to MSC in the exercise of reasonable care.

23.   These hazardous conditions existed for a period of time before the incident.

24.   These conditions were neither open nor obvious to MOORE.

25.   At all times relevant, MSC failed to adequately inspect the subject area and the vicinity for dangers, and MSC failed to adequately warn MOORE of the dangers.

26.   At all times relevant, MSC had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

27.   At all times relevant, MSC failed to maintain the subject area and the vicinity in a reasonably safe condition. For example, MSC failed to perform regular upkeep on the subject stairs, including, but not limited to, failing to make sure the steps had slip resistant strips that were functional to reduce the slipperiness of the steps. This failure to maintain is only an example, and MSC failed to maintain the subject area and the vicinity in other ways as well.

28.   At all times relevant, MSC participated in the design and/or approved the design of the subject area and the vicinity involved in MOORE'S incident.

29.   At all times relevant, MSC participated in the installation and/or approved the installation of the subject area and the vicinity involved in MOORE'S incident.

30.   The crewmembers of the *Meraviglia* were in regular full-time employment of MSC and/or the ship, as salaried crewmembers.

31.   MSC's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and MSC had the right to hire and fire its crewmembers, employees, and/or agents.

32.   MSC is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.   The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of MSC, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   The crewmembers were represented to MOORE and the ship's passengers as employees of MSC through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by MSC. MSC knew that the crewmembers represented themselves to be employees of MSC and allowed them to represent themselves as such. MOORE detrimentally relied on these representations as MOORE would not have proceeded on the subject cruise had MOORE believed the crewmembers were not employees of MSC.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.   MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-26 and 30-34, as if set forth herein.

36.    MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.    At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC breached the duty of reasonable care owed to MOORE and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were present at the time of MOORE'S incident.

39.    MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.    These risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.    MSC'S negligence proximately caused MOORE great bodily harm in that, but for MSC'S negligence, MOORE'S injuries would not have occurred.

43.   As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

44.   The losses are permanent and/or continuing in nature.

45.   MOORE suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

46.   MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26-27, and 30-34, as if set forth herein.

47.   MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

49.     At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MOORE and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17(a-g, j)** of the instant Complaint were present at the time of MOORE'S incident.

50.     MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.     Moreover, these risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately maintain the subject area and the vicinity.

52.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.     MSC'S negligence proximately caused MOORE great bodily harm in that, but for MSC'S negligence, MOORE's injuries would not have occurred.

54.     As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

55.     The losses are permanent and/or continuing in nature.

56.   MOORE has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## <u>NEGLIGENT FAILURE TO REMEDY</u>

57.   MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

58.   MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.   At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MOORE and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in **<u>paragraph 17</u>** of the instant Complaint were present at the time of MOORE'S incident.

61.   MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.   Moreover, these risk-creating and/or dangerous conditions were caused MSC'S failure to adequately remedy the subject area.

63.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.   MSC'S negligence proximately caused MOORE great bodily harm in that, but for MSC'S negligence, MOORE's injuries would not have occurred.

65.   As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67.   MOORE has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical

care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

68.    MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-24 and 30-34, as if set forth herein.

69.    At all times relevant, MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MOORE.

70.    Such duty includes, but is not limited to, the duty that MSC owes to warn passengers of any dangers that it knew or should have known were not open and obvious to MOORE.

71.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.    At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MOORE and was negligent by failing to warn MOORE of the dangerous conditions discussed in **paragraph 17(a-f, h-j)** of the instant Complaint.

73.    Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.    These dangerous conditions were also created by MSC.

75.    MSC failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or MSC failed to warn MOORE despite knowing of the dangers.

76.    These dangerous conditions existed for a period of time before the incident.

77.   These conditions were neither open nor obvious to MOORE.

78.   MSC'S breach was the cause in-fact of MOORE'S great bodily harm in that, but for MSC'S breach MOORE's injuries would not have occurred.

79.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.   MSC'S breach proximately caused MOORE great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

81.   As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity

for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT**
**AREA AND THE VICINITY**

84.    MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 28-34, as if set forth herein.

85.    At all times material hereto, MSC owed a duty to its passengers, and in particular a duty to MOORE, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in **paragraph 17(a-g, j)** in the instant Complaint, as well as to design and install reasonable safeguards.

86.    At all times material hereto, MSC participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MOORE was injured into the channels of trade, and/or MSC approved of the subject vessel's design, including the design of the subject area and the vicinity.

87.    At all times material hereto, MSC manufactured, designed, installed, and/or approved of the *Meraviglia*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MOORE, to design, install and/or approve of the subject area and the vicinity without any defects.

88.    At all times material hereto, MSC through its agents and/or employees who were acting in the course and scope of their employment and/or agency with MSC, designed, installed, and/or approved of the subject area and the vicinity involved in MOORE'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.     MSC provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.     MSC maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Meraviglia*, during the new build process.

91.     MSC has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.     MSC has the right to inspect and reject design elements before taking possession of the ship.

93.     However, MSC permitted the dangerous conditions discussed in **paragraph 17(a-g, i)** of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.     Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

95.     The design flaws that made the subject area and the vicinity involved in MOORE'S incident unreasonably dangerous were the direct and proximate cause of MOORE'S injuries.

96.     MSC is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MOORE'S incident, which it knew or should have known of.

97.     MSC failed to correct and/or remedy the defective conditions, despite the fact that MSC knew or should have known of the danger(s).

98.     MSC'S breach was the cause in-fact of MOORE'S great bodily harm in that, but for MSC'S breach MOORE's injuries would not have occurred.

99.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water

subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

100. MSC'S breach proximately caused MOORE great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

101. As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

102. The losses are permanent and/or continuing in nature.

103. MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF MSC'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

104. MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

105. MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

106. The crewmember responsible for controlling the crowd, as well as the crewmember responsible for blocking off the area and/or removing and/or warning of the liquid in the subject area, were agents of MSC for the following reasons:

a.   They were the staff and/or employees of MSC, or were MSC'S agents, apparent agents, and/or servants; and/or

b.   These staff, employees, and/or agents were subject to the right of control by MSC; and/or

c.   These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.   MSC acknowledged that these staff, employees, and/or agents would act on MSC'S behalf, and they accepted the undertaking.

107. MSC is vicariously liable for the acts of its staff, employee, and/or agent who was responsible for controlling the crowd in the subject area.

108. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

109. This negligence proximately caused MOORE great bodily harm in that, but for this negligence, MOORE'S injuries would not have occurred.

110. As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

111. The losses are permanent and/or continuing in nature.

112. MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VII
## VICARIOUS LIABILITY AGAINST MSC FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

113. MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 30-34, as if set forth herein.

114. MSC, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

115.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

116.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of MSC, subject to its direction and control, who were engaged in the activity of discharging MSC'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

117.  MSC is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

118.  MSC directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

119.  MSC created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

120.  MSC pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

121.  MSC collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

122.  MSC'S marketing materials described the infirmary in proprietary language.

123.  The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by MSC.

124.  MSC provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

125. At all times material hereto, MSC, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

a.  The ship's medical staff unreasonably delayed in taking MOORE to the medical center.

b.  Moreover, the staff that arrived did not have a first aid kit with them.

c.  When she arrived at the medical center, she was not treated until approximately fifteen to twenty minutes later.

d.  The ship's doctor did not give MOORE a large enough quantity nor a strong enough medicine or anesthesia or similar medicine prior to applying the stitches to her, such that she was in great pain during the entire procedure.

e.  Furthermore, the ship's nurse/other staff member did not prescriber her the pain medicine she needed for her trip home, even though she complained of being in great pain, and only gave her approximately two small packets of an aspirin like medicine that was not strong enough for her pain.

f.  MSC failed to promptly provide MOORE with proper medical and/or first aid care and attention.

g.  MSC failed to timely and properly attend to MOORE, to her injuries, and to her pain.

h.  MSC failed to provide reasonable medical and/or first aid care.

i.  MSC failed to timely and properly treat and care for MOORE.

j.  MSC failed to timely and properly examine MOORE'S injuries.

k.  MSC failed to take proper measures to secure proper treatment for MOORE, including unreasonably delaying taking measures to secure such proper treatment.

l.  MSC failed to properly bring and/or arrange for MOORE to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  Moreover, the ship's doctor failed to diagnose MOORE's traumatic brain injuries.

n.  Moreover, the ship's doctor failed to make an appropriate referral for her treatment.

o.  MSC failed to give MOORE proper discharge instructions.

126.  **The standards of reasonable medical care under the circumstances required that MSC avoid the failures enumerated in the paragraph above**.

127.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

128.  Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

129.  MSC is therefore vicariously liable for all injuries and damages sustained by MOORE as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

130.  At all times material hereto, the aforementioned acts and/or omissions on the part of

MSC'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

131.  The negligence of MSC'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused MOORE great bodily harm in that, but for MSC's negligence, MOORE'S injuries would not have occurred and/or said injuries would have been substantially lessened.

132.  MSC, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

133.  As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

134.  The losses are permanent and/or continuing in nature.

135.  MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity

for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VIII**
**APPARENT AGENCY**
**FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

136.  MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 31-34, as if set forth herein.

137.  At all times material hereto, the ship's medical staff and regular crew represented to MOORE and to the ship's passengers as employees and/or agents and/or servants of MSC, in that:

a.  The medical staff wore a ship's uniform;

b.  The medical staff ate with the ship's crew;

c.  The medical staff was under the commands of the ship's officers;

d.  The medical staff worked in the ship's medical department;

e.  The medical staff was paid a salary by MSC;

f.  The medical staff worked aboard the vessel;

g.  The medical staff spoke to MOORE as though they had authority to do so by MSC.

138.  In addition, MSC further represented to MOORE that the vessel's medical staff and regular crew were agents and/or employees of MSC through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "MSC *Meraviglia*'s Medical Center/our infirmary/our medical center," and through encouraging MOORE to make use of "its" infirmary/medical center if MOORE was in need of medical attention.

139.  Furthermore, at no time did MSC represent to MOORE in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew were

not agents or employees of MSC.

140. At all material times, MOORE reasonably relied on the representations to MOORE'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of MSC.

141. It was reasonable to believe that the medical staff and regular crew were MSC'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by MSC.

142. This reasonable reliance was detrimental because it delayed MOORE from receiving proper medical treatment and/or MOORE would not have gone on the subject cruise with MSC had MOORE known that the medical staff and regular crew on the ship were not MSC'S agents.

143. MSC is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

144. MSC had a duty to provide MOORE with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide MOORE with reasonable care under the circumstances.

145. MOORE'S injuries were aggravated due to the fault and/or negligence of MSC through the acts of its apparent agents as follows:

    a. The ship's medical staff unreasonably delayed in taking MOORE to the medical center.

    b. Moreover, the staff that arrived did not have a first aid kit with them.

    c. When she arrived at the medical center, she was not treated until approximately fifteen to twenty minutes later.

    d. The ship's doctor did not give MOORE a large enough quantity nor a strong

enough medicine or anesthesia or similar medicine prior to applying the stitches to her, such that she was in great pain during the entire procedure.

e.  Furthermore, the ship's nurse/other staff member did not prescriber her the pain medicine she needed for her trip home, even though she complained of being in great pain, and only gave her approximately two small packets of an aspirin like medicine that was not strong enough for her pain.

f.  MSC failed to promptly provide MOORE with proper medical and/or first aid care and attention.

g.  MSC failed to timely and properly attend to MOORE, to her injuries, and to her pain.

h.  MSC failed to provide reasonable medical and/or first aid care.

i.  MSC failed to timely and properly treat and care for MOORE.

j.  MSC failed to timely and properly examine MOORE'S injuries.

k.  MSC failed to take proper measures to secure proper treatment for MOORE, including unreasonably delaying taking measures to secure such proper treatment.

l.  MSC failed to properly bring and/or arrange for MOORE to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  Moreover, the ship's doctor failed to diagnose MOORE's traumatic brain injuries.

n.  Moreover, the ship's doctor failed to make an appropriate referral for her treatment.

o.  MSC failed to give MOORE proper discharge instructions.

146. **The standards of reasonable medical care under the circumstances required that MSC avoid the failures enumerated in the paragraph above**.

147. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

148. As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

149. The losses are either permanent or continuing in nature.

150. MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

**ARONFELD TRIAL LAWYERS**
Aronfeld.com

151. MOORE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 30-34 as if set forth herein.

152. MSC owed MOORE the duty to exercise reasonable care under the circumstances for the safety of its passengers.

153. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

154. MSC elected to discharge this duty by having MOORE seen by its own ship's physicians and/or other crew members.

155. As such, MSC voluntarily assumed a duty for the benefit of MOORE to use reasonable care in the provision of medical services to MOORE.

156. At all times material hereto, MSC, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

   a. The ship's medical staff unreasonably delayed in taking MOORE to the medical center.

   b. Moreover, the staff that arrived did not have a first aid kit with them.

   c. When she arrived at the medical center, she was not treated until approximately fifteen to twenty minutes later.

   d. The ship's doctor did not give MOORE a large enough quantity nor a strong enough medicine or anesthesia or similar medicine prior to applying the stitches to her, such that she was in great pain during the entire procedure.

   e. Furthermore, the ship's nurse/other staff member did not prescriber her the pain medicine she needed for her trip home, even though she complained of

being in great pain, and only gave her approximately two small packets of an aspirin like medicine that was not strong enough for her pain.

f.  MSC failed to promptly provide MOORE with proper medical and/or first aid care and attention.

g.  MSC failed to timely and properly attend to MOORE, to her injuries, and to her pain.

h.  MSC failed to provide reasonable medical and/or first aid care.

i.  MSC failed to timely and properly treat and care for MOORE.

j.  MSC failed to timely and properly examine MOORE'S injuries.

k.  MSC failed to take proper measures to secure proper treatment for MOORE, including unreasonably delaying taking measures to secure such proper treatment.

l.  MSC failed to properly bring and/or arrange for MOORE to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  Moreover, the ship's doctor failed to diagnose MOORE's traumatic brain injuries.

n.  Moreover, the ship's doctor failed to make an appropriate referral for her treatment.

o.  MSC failed to give MOORE proper discharge instructions.

157. **The standards of reasonable medical care under the circumstances required that MSC avoid the failures enumerated in the paragraph above**.

158. At all times material hereto, the aforementioned acts or omissions on the part of MSC fell below the standard of care.

159. MSC'S negligence proximately caused MOORE great bodily harm in that, but for MSC'S negligence, MOORE'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

160. MSC, through its employees and agents, to wit, the ship's medical staff and regular crew, knew, or should have known, that the medical and first aid procedures they employed violated reasonable standards of medical care.

161. As a result of MSC'S negligence, MOORE has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MOORE'S vacation, cruise, and transportation costs.

162. The losses are permanent and/or continuing in nature.

163. MOORE has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MOORE will suffer and incur in the future, as a result of MOORE's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of MOORE'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

**ARONFELD TRIAL LAWYERS**
Aronfeld.com

Plaintiff, TAYLOR ANNE MOORE, demands trial by jury on all issues so triable.

**Dated:** November 21, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for MOORE***