UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23807

TAYLOR ANNE MOORE,

    Plaintiff,

v.

MSC CRUISES, S.A.,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND SUPPORTING MEMORANDUM OF LAW**

    Plaintiff, TAYLOR ANNE MOORE, (hereinafter, "Ms. Moore"), by and through her undersigned counsel, hereby files her Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law, against Defendant, MSC CRUISES, S.A. (hereinafter, "MSC"). In support of her motion, Ms. Moore states as follows:

**STATEMENT OF FACTS**

    MOORE alleges that,

14. On or about October 14, 2022, between approximately 12:00 a.m. and 1:00 a.m., MOORE (an honorably discharged disabled army veteran) was stepping down the outdoor stairs between deck 18 and deck 16. However, unbeknownst to MOORE, one of the steps near the middle of the stairs was wet with a foreign transitory liquid substance, causing it to be unreasonably slippery. As a result, when MOORE stepped on this step, she slipped, fell backwards, and hit her elbow, body, and the back of her head on the steps behind her.

15. As a further result, MOORE sustained severe injuries that include, but are not limited to, a severely injured head that required stitches, severe bleeding, a concussion, possible traumatic brain injuries, and other serious bodily injuries.

[DE 33 at pp. 3-4].

## THE SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d at 1346 (S.D. Fla. 2016). Indeed, the court in *Williford v. Carnival Corp*., No. 17-21992-CIV, 2019 WL 2269155 (S.D. Fla. May 28, 2019) found based on essentially the same factual scenario here, that the cruise line had spoliated evidence and that it should be sanctioned for doing so. The court ruled as follows:

> **This Order grants (but only in part) Plaintiff Diane Williford's spoliation sanctions motion concerning Defendant Carnival Corporation's inability to locate and produce x-rays which medical professionals took of Williford in an onboard medical clinic after she slipped and fell on allegedly wet and slippery exterior stairs aboard the Carnival Dream during a June 2016 cruise**. The relief provided here, however, is (for now) more modest than the alternatives requested by Williford.
>
> The harsh-type sanctions Williford urges here (such as an order establishing a disputed issue as a fact and an adverse inference) require bad faith -- which the Undersigned finds is not present on this record.
>
> **On the other hand, the reasons Carnival has proffered for the x-rays' loss or destruction arguably raise more questions than they answer**. Saying that "a technical problem" with both the x-ray machine and the computer previously attached to it caused the loss is a detail-free, vague response which a jury might want to consider in evaluating Williford's claim that she was unnecessarily evacuated from a ship because cruise ship medical staffers misread her x-rays and incorrectly concluded that she had a fractured hip.

*Id*. at *1 (emphasis added).

Here, after MOORE slipped and fell on these stairs, she was seen on MSC's CCTV cameras such that the fact finder would have had the opportunity to see her physical condition after her incident. However, the fact finder is deprived of this opportunity, because MSC lost the CCTV footage that it admits existed at one time and had viewed. As testified to during the deposition of MSC's corporate representative, Jeffrey Ramos:

> Q·· Okay.· And here we're on Page 67. This is the email that was, we were mentioning earlier.· This is from CC, I guess the CCTV department on the Meraviglia; is that correct?
> A·· We call them the CCTV operator.
> Q·· Right.· So it's from the CCTV operator to the staff captain. And the CCTV operator, who I guess is Andre L. Snyman; correct?

> A· · Yes.
> Q· · So Mr. Snyman, the CCTV operator, says good day staff, regarding the request for a review and download of video concerning pax -- pax means passenger; right?
> A· · Yes.
> Q· · Concerning passenger incident MR02, slash, 04, occurred in the Horizon Bar area.· Regrettably the area is under very limited CCTV coverage and no accident can be noticed for the stipulated time.· **The guest can only be seen coming to the Mini Club where she waited for medical; correct?**
> **A· · Yes**.
> Q· · Okay.· So I guess I have this question then.· **What happened to this footage that he's mentioning where it says the guest can be seen coming to the Mini Club where she waited for medical? Do we, do we, do we still have that or what happened to that?**
> **A· · No, unless it's saved at the time of the accident, any footage that is not saved gets overwritten after thirty days.**
> **Q· · Why didn't MSC preserve video of what our client looked like right after her incident?**
> **MR. DEVINE:· Objection.**
> **THE WITNESS:· They're only required to capture the, the scene of the accident, the actual accident itself.**
> **BY MR. HAYASHI:**
> **Q· · So if somebody gets, gets hurt really bad and they want to tell a jury how, how badly they were hurt, there's, you know, MSC won't save the video to either, to either show what they're saying is correct or incorrect?**
> **MR. DEVINE:· Objection.**
> **THE WITNESS:· Well, no, there should be a medical report that would describe the, the medical condition**.
> BY MR. HAYASHI:
> Q· · Well, right, but they're, MSC doesn't try to preserve -- let me ask it this way. MSC doesn't try to preserve video to confirm if a, if a, if a person was injured as badly as they claim they are from visual, from, from, you know, from what you can see on a video?
> MR. DEVINE:· Objection.
> THE WITNESS:· No, from what, the instructions are just to capture the scene of the accident.

See [DE 36-3 at 88:9-90:15] (emphasis added); see also Id. at 149:3-22 (MSC's corporate representative was also unsure whether there were CCTV cameras in the lobby of the medical center and whether any such footage was lost. MSC's representative testified as follows: "Q· · There's no, MSC doesn't have CCTV in this medical center on the Meraviglia; does it? . . . but do you know if it's in the lobby or not? . . . A· · **Even if there were, I mean, it's already too late to preserve, because if it's after thirty days, it's overwritten**. Q· · Okay.· So even if there was

any, it doesn't exist anymore? A· · That's correct.").

Moreover, on July 13, 2023, MOORE took the deposition of MSC's ship doctor that treated her on the ship, who testified that MOORE appeared intoxicated to him. However, notwithstanding this observation, MSC completely failed to preserve any of the receipts of alcohol purchases MOORE made, thereby depriving her of her ability to defend herself from these accusations. As testified to during the deposition of MSC's corporate representative, Jeffrey Ramos:

> **Q· · If Ms. Moore made alcoholic purchases at this Waves Restaurant, would there be individual receipts MSC would preserve showing that she, which alcoholic beverages she preserve, she purchased and when she purchased them?**
> **A· · Normally there are some receipts.· But we would have to make a request pretty much as soon as the voyage was over.**
> **Q· · So they, so no request was made in this case?**
> **A· · That's correct.**
> **Q· · Why wouldn't a request have been made if the doctor believed Ms. Moore was intoxicated?**
> **MR. DEVINE:· Objection.**
> **THE WITNESS:· No, it just, I guess at the time of the incident, I don't think they were thinking about the lawsuit.**
> **BY MR. HAYASHI:**
> **Q· · Well, they made an accident report to be fair; right? That was prepared in anticipation of litigation?**
> **A· · Yeah, they do the accident report for all accidents**.
> Q· · Well, that means they anticipate litigation in all accidents; right?
> MR. DEVINE:· Object to form.
> THE WITNESS:· Well, not all our accidents are, have litigation.· It's a policy for our ships that if there's any accident on board, they automatically do an accident report.
> BY MR. HAYASHI:
> Q· · Well, if that, I mean -- okay. So whether MSC anticipates litigation or not, it always makes an accident report --
> MR. DEVINE:· Objection.
> BY MR. HAYASHI:
> Q· · -- every, every time there's a, there's an accident on board?
> A· · Yes.
> MR. DEVINE:· Object to the form.
> THE WITNESS:· I mean, yeah, so when a, the guest goes to the medical center and reports an injury due to an accident, our policy is to conduct an accident investigation.
> BY MR. HAYASHI:
> Q· · But that just happens in the ordinary course of business, that's not something that's happened, that happens in specific circumstances, it happens every time?

>MR. DEVINE:· Object to form.
>THE WITNESS:· Yeah -- well, I don't understand.· I mean, if somebody is injured, we, we're, we have to do an accident report, you know, to find out the cause.
>BY MR. HAYASHI:
>**Q·· Yeah, I mean, let me just ask it this way. Either, either MSC anticipates litigation – either MSC anticipated litigation in this case or it did not. So let's, so just for, for this case, is your testimony that MSC did not anticipate litigation?**
>**MR. DEVINE:· Object to form.**
>**THE WITNESS:· Well, when they're doing the report, I mean, I know there's a, there's a disclaimer on the, on the accident report that they anticipate litigation**. But, you know, at the time they're doing the accident investigation, you know, they're not thinking about, you know, litigation at the time. They're just doing the investigation.
>BY MR. HAYASHI:
>Q·· Well, that disclaimer is either true or it isn't, Mr. Ramos. I mean, how can MSC be anticipating litigation but not thinking about litigation, I'm not sure I understand? Or, or, or is your testimony that's just not true when it disclaims an anticipated litigation, it just really didn't in this case?
>MR. DEVINE:· Objection.
>THE WITNESS:· Well, no, I mean any, I would think any type of accident that occurs on our ship, I mean, there's a potential litigation on, on any accident.

[DE 36-3 at 135:19-138:25].

For these reasons, MOORE respectfully submits that the spoliation of this evidence occurred due to the negligence of MSC. For the reasons that will be discussed below, MOORE respectfully submits that MSC should be sanctioned for this spoliation.

**I.  Rule 37(e), and not common law, applies to this dispute over CCTV and other digitally stored footage (including the receipts).**

At the outset, Ms. Moore notes that she is making her claim of spoliation under Fed. R. Civ. P. 37(e), and not under the court's inherent authority, which is critical because:

>(1) the inherent-authority doctrine she [could otherwise have] invoke[d] always requires bad faith, while **Rule 37 authorizes some relief for the loss of electronically stored information ("ESI") without bad faith**, and (2) sanctions imposed under the inherent-authority doctrine are permitted only when the missing evidence is **"crucial"** to the movant's case, while **Rule 37 does not require the prejudice to reach that level**.

*Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 WL 6335178, at *2 (S.D. Fla. Dec. 4, 2018), reconsideration denied, No. 18-20957-CIV, 2019 WL 330865 (S.D. Fla. Jan. 25, 2019). Rule 37(e) provides as follows,

**(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) <u>**upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice**</u>; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

*Sosa*, 2018 WL 6335178, at *8 (emphasis added) (citing Fed. R. Civ. P. 37). "Rule 37(e) 'now governs a district court's power to sanction a party for spoliation of electronically stored information.'" *Sosa*, 2018 WL 6335178, at *9. Moreover, "Rule 37(e) 'forecloses reliance on inherent authority to impose sanctions for spoliation.'" *Sosa*, No. 18-20957-CIV, 2018 WL 6335178, at *9 (citing *Wooden v. Barringer*, No. 3:16-CV-446-MCR-GRJ, 2017 WL 5140518, at *3-4 (N.D. Fla. Nov. 6, 2017).

However, "[d]etermining whether Rule 37 even applies in the first place depends on whether the missing [evidence] constitutes ESI under Rule 37, which does not expressly define ESI." *Sosa*, No. 18-20957-CIV, 2018 WL 6335178, at *2.

The court in *Sosa* considered a similar circumstance involving another cruise line defendant's previous mishandling and loss of CCTV. *Sosa*, 2018 WL 6335178, at *11. The court was confronted with an argument that CCTV did not constitute ESI, because "'[t]he CCTV footage in [the *Sosa*] case was removed from the protection of electronically stored information under Rule 37(e) when it was allegedly converted to a permanent format by [a Carnival security officer, who later deleted it.]'" *Id*. However, the court held that CCTV was ESI, regardless of whether the subject CCTV had ever been converted to a permanent format or not. *Id*. at *12 (Even if "the video was downloaded to an onboard drive in the ship's computer (and was somehow lost or destroyed after that), then that does not mean that Rule 37(e) is somehow inapplicable or that the footage is not ESI."). This holding was similarly articulated in *Coward v.*

*Forestar Realty, Inc.*, No. 4:15-CV-0245-HLM, 2017 WL 8948347 (N.D. Ga. Nov. 30, 2017), where the court found that "[a]lthough the laptop itself is tangible evidence, **the electronic information stored within the laptop is the relevant evidence.... It is the loss of the electronic evidence stored on the laptop that gives rise to this dispute—one that falls squarely within the scope of Rule 37(e)**."). *Id*. at *7 (emphasis added) (quoting *Moody v. CSX Transp., Inc.*, 07-CV-6398P, ⸺ F. Supp. 3d ⸺, ⸺, 2017 WL 4173358, at *10 (W.D.N.Y. Sept. 21, 2017)).

Here, MSC does not even claim that the CCTV footage was ever converted into a physical format, but it is clear that CCTV is ESI under the rationales of *Sosa* and *Coward* regardless, and is thus subject to Federal Rule of Civil Procedure 37(e). *See Sosa*, 2018 WL 6335178, at *12*; see also Coward*, 2017 WL 8948347, at *7. This analysis equally applies to the alcohol receipts, as such receipts would also need to be digitally stored, and therefore MSC's loss of the receipts is likewise governed by Fed. R. Civ. P. 37(e).

II.   **The loss of electronically stored information and the appropriateness of sanctions under the rule.**

Having determined that Rule 37 applies, the following four conditions must be met before imposing sanctions for the spoliation of ESI:

> **First**, the ESI should have been preserved in the anticipation or conduct of the litigation. **Second**, the ESI is lost or destroyed. **Third**, the loss of the ESI is due to the party's failure to take reasonable steps to preserve the ESI. **Last**, the ESI cannot be restored or replaced through additional discovery.

*Sosa*, 2018 WL 6335178, at *10 (quoting *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2018 WL 4856767, at *2 (N.D. Fla. Oct. 5, 2018)) (emphasis added).

As to the first condition, MSC cannot dispute that it anticipated that Ms. Moore's incident might result in litigation, and that it therefore had a duty to at least preserve at a minimum the CCTV footage of Ms. Moore that MSC's investigator saw, showing her waiting for medical to arrive after her injury, as well as the receipts for the purchase of alcohol that it contends made her intoxicated. Indeed, MSC prepared a contemporaneous guest incident report, which it claims was expressly prepared in anticipation of litigation.

As to the second condition, MSC clearly lost or destroyed the subject CCTV footage and receipts since it believed this evidence wouldn't be needed in a lawsuit since MSC was both somehow anticipating litigation and not anticipating litigation at the same time according to its

corporate representative.

As to the third condition, *Sosa* is again instructive. As it did in the instant case, MSC indisputably anticipated litigation, yet it inexplicably allowed usual key pieces of evidence to be destroyed, the CCTV footage of Ms. Moore's physical condition after her incident, as well as receipts for her alcohol purchases. *Sosa*, 2018 WL 6335178, at *19. In this regard, just like the defendant failed to do in *Sosa*, MSC offers no reasonable explanation for why it apparently took no measures to preserve at least the CCTV footage that its investigator was seeing with his own eyes after Ms. Moore's incident, nor does it explain why it failed to preserve the alcohol receipts despite its doctor finding that she was intoxicated. Therefore, MSC did not take reasonable steps to preserve the CCTV footage.

"The next issue that must be resolved before Rule 37(e)(1) or (2) remedies are activated is whether the CCTV footage and receipts 'cannot be restored or replaced through additional discovery.'" *Sosa*, 2018 WL 6335178, at *19. This is certainly the case here, since the CCTV and receipts no longer exist, and during the local rule 7.1 conference with counsel for MSC, MSC did not agree to stipulate to the accuracy of MOORE's description of her own pain and physical condition she was in immediately after her incident (during the time the CCTV would have shown), nor was MSC agreeable to dropping its allegations that MOORE was intoxicated at the time of her incident.

In regard to the prejudice requirement, "[d]etermining the content of lost information may be a difficult task in some cases, **and placing the burden of proving prejudice on the party that did not lose the information may be unfair**." *Sosa*, 2018 WL 6335178, at *20 (emphasis added) (citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *see also Coward*, 2017 WL 8948347, at *8 ("[T]he party accused of spoliating evidence, not the party moving for spoliation sanctions, bears the burden of showing the lack of prejudice.")

Here, the prejudice to Ms. Moore is clear. Because of MSC's spoliation of the subject CCTV footage, as well as the body camera footage, this case is now simply just Ms. Moore's word against MSC's word.

As such, if MSC is allowed to preserve only CCTV and receipts that it believes is helpful to itself, MSC will be heavily incentivized to abuse the process of preserving evidence since it can always argue that nobody knows for certain what the CCTV footage or receipts would have shown, but that would defeat the entire reason why parties are prohibited from spoliating

evidence, since the fact finder should be able to know what the evidence showed without having to rely on MSC's unsubstantiated representations that missing evidence might not have been useful anyway.

As such, MSC's self-serving representations should not be credited. Ms. Moore likewise submits that MSC needs to be sanctioned in this regard due to its spoliation of the alcohol receipts, which would have made it clear that she did not have many drinks in a reasonable amount of time before her incident and would have reduced the likelihood that the jury would incorrectly believe she was intoxicated at the time of her incident.

As such, Ms. Moore "cannot probe the accuracy of [MSC's representations] because [it] inexplicably lost the video footage. . . .  Therefore, [this Court should] conclude[ ] that all the basic prerequisites for potential remedies under subsections (1) and (2) [of Rule 37((e)] have been met[.]" *Sosa*, 2018 WL 6335178, at *20. As such,

> [t]he Court must determine what sanctions to impose under Rule 37(e)(1). Importantly, **"[d]istrict courts have broad discretion to impose sanctions."** *Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Civil Action File No. 1:12-CV-3096-MHC, 2015 WL 11199154, at *2 (N.D. Ga. Feb. 3, 2015). "Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator." *Storey*, 2017 WL 2623775, at *2.

*Coward*, 2017 WL 8948347, at *9 (emphasis added).

As such, MOORE respectfully requests the following jury instruction, which is similar to the relief provided in *Sosa*, **and which is not an adverse inference** as a matter of law,

> You have heard testimony about evidence which has not been produced. Counsel for Plaintiff has argued that this evidence was in Defendant's control and would have proven facts material to the matter in controversy.
>
> If you find that the Defendant could have produced the evidence, and that the evidence was within its control, and that this disputed evidence would have been material in deciding among the facts in dispute in this case, and that the Defendant acted in bad faith in not producing the evidence, then you are permitted but not required, to infer that the evidence would have been unfavorable to the Defendant.
>
> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether the defendant had a reason for not producing this evidence, which was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and

circumstances in this case.

*Martinez v. Brink's, Inc.*, 171 F. App'x 263 (11th Cir. 2006).

In the alternative, MOORE requests an order similar to the order in *Williford v. Carnival*, where Carnival was found to have spoliated ESI without adequate justification:

> Therefore, Williford will be permitted to present evidence about the loss or destruction of the x-rays (and the surrounding circumstances) in order to minimize the prejudice flowing from the unavailability of the x-rays. Carnival, however, will likewise be permitted to present evidence of the circumstances it believes demonstrate an innocuous reason for the inability to find the x-rays, and it may argue that it is not in any way at fault for the missing x-rays.
>
> But Williford will be given the choice to decide whether to use this remedy, as there could be some negative consequences flowing from it. This Order will provide the procedural specifics of Williford's choice after explaining why other sanctions are not warranted.
>
> One final introductory point: Carnival can, at trial, prevent the introduction of evidence about the loss or destruction of the x-rays, and about its provision of a fuzzy, hazy explanation for the loss of the x-rays, by stipulating that (1) the x-rays did not reveal a fractured hip and (2) Williford's medical evacuation expenses were proximately caused by a ship medical staffer incorrectly interpreting the x-rays as showing a fractured hip. Because there are no longer any medical malpractice claims in the case (procedural posture outlined below), a Carnival stipulation (if it were to be made) would still permit Carnival to challenge liability (e.g., it did not breach any standard of care concerning the allegedly slippery steps, or that Williford herself was negligent when she used the stairs).
>
> If no stipulation by Carnival were to be given, then Williford will be permitted at trial to introduce evidence of Carnival's inability to produce the x-rays (including Carnival's detail-free explanation that a "technical problem" was responsible) and to argue why that factual scenario supports her theory that the $ 120,000 in expenses she incurred for being medically evacuated from the ship were medically unnecessary. Carnival, on the other hand, will be able, at trial, to introduce evidence explaining how and why the x-rays could not be located (including evidence to support its position that it is not at fault because the outside vendor it retained to install and maintain the x-ray machine aboard the Dream could not locate the images) and to argue against Williford's causation theory concerning those medical expenses.

*Williford v. Carnival Corp.*, No. 17-21992-CIV, 2019 WL 2269155, at *1 (S.D. Fla. May 28, 2019).

Ms. Moore lastly requests her reasonable attorneys' fees and costs for researching for,

drafting, and filing her motion for sanctions for spoliation of evidence and all supporting memorandum, as well as for attending the previous hearing on this issue, with interest.

**WHEREFORE**, Plaintiff, TAYLOR ANNE MOORE, respectfully requests an order granting her the relief requested above, and any other relief which this Honorable Court deems just and proper.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned certifies that counsel for the movant conferred prior to setting the initial hearing on this matter with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, and represents that MSC is opposed to Ms. Moore's request for relief. At the hearing on Plaintiff's ore tenus motion, this Honorable Court requested that the parties' confer regarding whether there was any possibility of the spoliation being mitigated by any further discovery or agreement, and if there was not, to brief the matter of spoliation. The parties conferred and determined that there was no such possibility and as such, Ms. Moore files the instant motion.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on July 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

Respectfully submitted,
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Tel: (305) 441- 0440
Fax: (305) 441 - 0198
Attorneys for MOORE

By:   */s/ Matthias M. Hayashi, Esq.*
Spencer Marc Aronfeld, Esq.
Florida Bar Number: 905161
aronfeld@aronfeld.com
Abby Hernández Ivey, Esq.

                                                              Florida Bar No: 1002774
                                                              aivey@aronfeld.com
                                                              Matthias M. Hayashi, Esq.
                                                              Florida Bar No. 115973
                                                             mhayashi@aronfeld.com